UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYLERRE C. PERRY, | CASE NO. 12cv2512-LAB (JMA) |
| Petitioner, | **ORDER OVERRULING OBJECTIONS TO REPORT AND RECOMMENDATION; AND** |
| vs. | |
| G. J. JANDA, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| Respondent. | |

**Introduction**

Petitioner Tylerre Perry, a prisoner in state custody, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. His sole claim is that the trial court committed error under *Doyle v. Ohio*, 426 U.S. 610 (1976) by admitting two statements he made after he was advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). The petition was referred to Magistrate Judge Jan Adler for report and recommendation. On October 3, 2013, Judge Adler issued his first report and recommendation, recommending that the writ be denied. After several extensions of time to file objections, Perry in late December filed various motions, including one seeking leave to amend the petition. Perry argued he did a poor job of researching and presenting his arguments, and requested permission to file the amended petition he attached as an exhibit. That motion was referred to Judge Adler for report and recommendation, and in light of this motion, the Court directed Judge Adler to

issue a revised report and recommendation addressing the proposed amended petition, and making a recommendation whether Perry would be entitled to relief either under the original petition or the amended petition.

On April 4, 2014, Judge Adler issued his new report and recommendation (the "R&R"), which recommended that leave to be amend be granted, but that even after the amendment, Perry could not prevail and the petition should be denied. Respondent did not object to the R&R, but Perry did. The Court therefore **ACCEPTS** the amended petition as Perry's operative pleading.

**Legal Standards**

A district court has jurisdiction to review a Magistrate Judge's report and recommendation on dispositive matters. Fed.R.Civ.P. 72(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id.* "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court therefore reviews de novo those portions of the R&R to which specific written objection is made. *United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003) (en banc). "The statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise." *Id.*

The R&R correctly states the standards for issuance of a writ of habeas corpus, and the Court does not repeat those here, except as necessary.

**Factual Background**

The following factual background is taken from the R&R's recitation of facts (R&R, 6:4–10:7), to which Perry does not object, and which the Court **ADOPTS**.

The California Court of Appeals found that on April 22, 2006, Keenan Wheeler and his friend Spencer Watts obtained Ecstasy pills that they planned to sell. That night, Watts received a phone call asking him to meet a potential buyer in the parking lot of a local shopping center. Watts drove there, with Wheeler as his passenger. Two men, who identified themselves as members of a Crips gang, got in, greeted Wheeler and Watts, and

asked to see the drugs. One of the men, later identified as Perry, sat behind Watts.  Watts handed Perry a bag of pills and told him how much they cost. Perry then pulled out a gun and he and his associate began to rob them, going through their pockets and taking cash. When Watts resisted and tried to drive away, Perry's associate urged Perry to shoot Watts, and Perry did, killing him.  (R&R, 6:11–7:19 (quoting Lodgment 5).)[1]

After an investigation of a year and a half, police arrested Perry.  Following his arrest, Perry was in the custody of Detective Pendleton. Pendleton and his partner read Perry his *Miranda* rights, then asked Perry whether he was willing to talk.  When Perry asked for an attorney, the interview ended. Perry was then booked and put into a holding cell while Pendleton completed paperwork. While Pendleton was completing paperwork, Perry asked him how he could give Pendleton information about what happened.  Pendleton gave him his business card, but did not ask him any questions. Pendleton then took Perry to a patrol car to be transported to the county jail, but after Perry said he had forgotten a phone number in his personal property, he was removed from the car and placed at a table so that he could look through his property and find it.

Without Pendleton asking any questions, Perry then said he did not want to "screw himself." Pendleton, in response, asked whether that meant Perry was intending to talk to him—and if that was what Perry did mean, Pendleton would take him back into the station to give him his *Miranda* admonition again. Perry then answered "No, this was an accident." When Pendleton said it[2] did not appear to be accidental," Perry said "There was a witness." Pendleton replied "We spoke to a lot of witnesses," and Perry said "You guys are trying to put me [in] jail." (*See* R&R, 11:2–9.) The statements to the effect that the shooting was an accident and that Perry did not want to "screw himself" were admitted over defense objections, and form the basis for Perry's challenge. The other statements were not

---

[1] This portion of the factual recitation is cited for the purpose of showing what the state courts found. The Court defers to these findings and presumes them to be correct, unless Perry rebuts them by clear and convincing evidence. *See Tilcock v. Budge*, 538 F.3d 1138, 1141 (9th Cir. 2008). Perry denies being the shooter, but he does not dispute that this is essentially the way in which events unfolded.

[2] Perry testified that he understood "it" to refer to the shooting.

admitted, and the word "No" in response to Pendleton's remark about re-admonishing Perry was also not admitted. The state courts held the two admitted remarks were spontaneous and voluntary and not made in response to questioning.

**Discussion of Objections**

Perry begins his Objections to the R&R with a detailed introduction and discussion of background information, most of which does not disagree in any material way with the R&R. He expressed some disagreement with the state courts' holding that his two remarks were spontaneous and voluntary, and argued that they were instead part of the questioning that had taken place earlier.

While Perry had mentioned some of his legal objections in passing earlier, they begin in earnest on page 19. Perry's first three objections are all related to the admission of a statement he made after invoking his right to silence, which he claims constituted a *Doyle* error.  Perry's fourth objection is to the R&R's suggestion that even is a *Doyle* error occurred, it was harmless.

**Objection: The remarks were a continuation of earlier questioning**

Perry's argument focuses not on the evidence itself but on the state courts' and the R&R's interpretation of the evidence. He does not point to evidence not before the state courts, and in any event he Court's review is limited to the record before the state courts. *Cullen v. Pinholster*, ___ U.S. ____, 131 S.Ct. 1388 (2011).

Perry's objections cite record evidence (Obj. at 4:26–9:21), and he argues that evidence shows that his statements were made as part of one continuous conversation and in relation to his request for an attorney. (*Id*. at 9:22–10:5.)[3] But Perry badly misconstrues the evidence he cites. While Perry was in the custody of Detective Pendleton, he invoked his right to counsel, and the interview ended. Perry was then taken to a holding cell for fifteen to twenty minutes while Pendleton completed paperwork. Perry initiated a conversation by asking how he could give the police information, but Pendleton did not talk

---

[3] Perry had asked for an attorney in response to a question. When the state courts determined that the two remarks were not made in response to questioning, they necessarily found that the two remarks were not part of the earlier questioning, as Perry now argues.

1   with him about it at the time. Instead, Pendleton gave Perry his business card, implying that

2   Perry could talk later if he wanted to. Perry was then put into a police car to be transported.

3   While there, Perry said he had forgotten a phone number, and he was taken out of the car

4   and made to sit at a table in order to look through his belongings and find it. It was then that

5   Perry made the two remarks.

6          Although Perry claims the evidence he cites shows the conversations were

7   continuous, he immediately thereafter admits they occurred fifteen to twenty minutes apart.

8   (*Id*. at 9:28.)  And although he says they were "in relation to Perry seeking counsel," (*id*. at

9   10:2), the evidence he cites shows this isn't true; the invocation of the right to counsel had

10  occurred much earlier at a different place, and several events and two other brief

11  conversations had intervened. The state courts' express determination that Perry made the

12  two statements spontaneously, voluntarily, and not in response to questioning is certainly

13  reasonable, and Perry's interpretation of the evidence is unreasonable.

14          **Objection: Failure to cite precedent to support state court rulings**

15          Perry's first objection is that "the Magistrate and State Court have yet to present or

16  [cite] a single case, and or, law that simply and directly establishes that only a 'portion' of a

17  statement of invocation is protected under any constitution, any amendment, or any existing

18  case law." (Obj. at 22:3–7.)  In support, Perry states that "the Magistrate cites 'all' cases that

19  simply and clearly establish in the U.S. Supreme Court the protection of the ENTIRE

20  statement of invocation, and the reasoning why." (*Id*. at 28:7–11 (emphasis in original).)

21          This objection is incorrect, because the R&R does cite precedent. (*See, e.g.*, R&R at

22  17:12–22:15.)  Moreover, this objection, even if it were true, doesn't show why the R&R is

23  wrong. Under § 2254(d), the Court can only grant the writ as to a legal issue if the state

24  courts' adjudication of Perry's claim was contrary to or involved an unreasonable application

25  of clearly established federal law as determined by the U.S. Supreme Court. In other words,

26  the state court rulings don't need to be supported by citation to federal law. Rather, Perry

27  must show that the state courts' rulings were contrary to U.S. Supreme Court precedent.

28  / / /

1   This objection could also be construed as a "blanket" objection to the R&R's

2   reasoning overall, *i.e.*, an argument that the R&R simply reached the wrong legal conclusion.

3   But a general conclusory objection that the R&R is wrong is not the kind of specific written

4   objection that triggers *de novo* review.   *See Saibu v. McEwen*, 2014 WL 1877446 at *1

5   (S.D.Cal., May 9, 2014) (citing *United States v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007)).

6   **Objection: No portion of Perry's statement should have been used at trial**

7   Perry's second objection, which is closely related to his first, is that "the scalpel

8   technique to excise out a portion of Perry's statement of invocation, does not permit its use

9   at trial." (Obj. at 23:19–21.)  Both Perry's first and second objection seem to be based on the

10   section of the R&R concluding that "[t]he state appellate court reasonably found, applying

11   clearly established Supreme Court authority, that the trial court's exclusion of 'No,' but

12   admission into evidence of the remainder of the subject statements, adequately protected

13   Petitioner's right to invoke his Fifth Amendment right to silence." (R&R at 21:20–24.)

14   This objection draws some support from *United States v. Bushyhead*, 270 F.3d 905,

15   912 (9th Cir. 2001) (holding that an invocation of the right to remain silent, coupled with an

16   explanation of the reason for remaining silent, was inadmissible). *Bushyhead*, however, dealt

17   with a statement that was not volunteered and given before *Miranda* warnings had been

18   given. It distinguished cases dealing with unsolicited confessions. *See id.* at 912–13. The

19   panel in *Bushyhead* distinguished *Rhode Island v. Innis*, 446 U.S. 291 (1980)), which held

20   that a suspect's unsolicited remarks did not implicate *Miranda*.

21   The state courts' interpretation of the facts, finding that Perry spontaneously

22   volunteered his remarks, was reasonable. Perry had been given *Miranda* warnings earlier,

23   and he invoked his right to remain silent until he spoke with an attorney. He made the two

24   later remarks in a time and place when the focus was on transporting him, not questioning

25   him. He had already invoked his rights and his invocation was being respected. He had been

26   left in a holding cell for 15 to 20 minutes while Detective Pendleton completed paperwork,

27   and was then moved to a sally port for transportation when he decided to speak. Although

28   he had mentioned the possibility that he might give information, Detective Pendleton

responded to that by simply giving Perry his business card, implying that Pendleton did not expect Perry to speak to him then and there.  There was no reason to think Perry was invoking his rights a second time.

Of the two admitted remarks, the first (that he didn't want to "screw himself") was not made in response to a question or anything else Detective Pendleton said. The second was made in response to Pendleton's question regarding whether Perry intended to speak and, if so, whether he needed to be given *Miranda* warnings again. Perry's response of "No, this was an accident" is difficult to construe. It's possible the "No" meant "No, I'm not going to say anything" or "No, I don't need *Miranda* warnings again," or "I shouldn't be here because this was an accident," or possibly something else. In any case, the "No" was not admitted, but the remainder of his statement, "this was an accident," was.

The timing and circumstances under which the remarks were made reasonably support the state court's conclusion that Perry was talking spontaneously, not making an explanatory invocation of his right to silence, and Perry has no rebutted this finding. Because the Court defers to the state courts' unrebutted findings that Perry volunteered his statements and did not make them in connection with invoking his rights, there is no factual basis for applying *Bushyhead* here.

**Objection: The State Court Erred in Failing to Follow *Bushyhead***

Perry's third objection is that his "relience [sic] on Bushyhead couldn't be more exact." (Obj. at 23:23-24.)  This objection does not seems to be aimed at the R&R, but rather at the California Court of Appeal's decision not to follow *Bushyhead*, "finding it unpersuasive and finding the Petitioner's reliance on *Bushyhead* misplaced." (R&R at 21:5–7.)

The state court agreed with that portion of *Bushyhead* which held that a defendant's remark "I have nothing to say" was inadmissible. (Lodgment 5 at 20–21.) It also noted facts that would have distinguished Perry's case from *Bushyhead*, including the fact that Perry's remarks were spontaneous and volunteered, and made well after Perry had received *Miranda* warnings but not as a part of invoking his *Miranda* rights. (*Id*. at 23–24.) Accepting / / /

1   these findings as true, *Bushyhead* would be inapplicable, and Perry's reliance on it would

2   indeed be misplaced.

3        The state court also expressed fundamental disagreement with *Bushyhead*, and

4   believed that decision wrongly applied Supreme Court precedent. (Lodgment 5 at 20–23.)

5   For that reason too, the state court declined to follow it.  Importantly, *Bushyhead* is a Ninth

6   Circuit decision; the Supreme Court has not established the same principle in any of its

7   holdings. *See United States v. Gomez*, 725 F.3d 1121, 1127 (9th Cir. 2013) (citing Ninth

8   Circuit precedent for the principle that a defendant's "explanatory refusal" to speak cannot

9   be introduced against him in the government's case-in-chief). Even assuming *Bushyhead*

10  were applicable here, it is not "clearly established Federal law, as determined by the

11  Supreme Court of the United States."  *See* 28 U.S.C. § 2254(d). The state court was not

12  obligated to follow it, and failure to follow it does not entitle Perry to habeas relief.

13            **Objection: *Doyle* Error Was Not Harmless**

14       Perry's fourth objection is to the R&R's suggestion that even if a *Doyle* error occurred,

15  it was harmless. (R&R at 22:26-28, 23:1) Perry claims that "[g]iven the evidence, there's no

16  doubt as to the prejudiceness [sic] of the statements in question.  The entire case against

17  Petitioner was circumstantial therefore, banking on the statements of Petitioner's post arrest

18  silence." (Obj. at 31:19-23.)

19       In fact, the case against Perry was strong and the admitted statements were not

20  decisive.  The gist of the statements was that Perry thought there was a danger he would

21  accidentally say something foolish, and that the shooting was an accident. While these

22  remarks could be construed to show consciousness of guilt, they are not strongly

23  incriminating. This is particularly true when they are compared to the rest of the case against

24  him, which included an eyewitness description of the shooter that matched Perry, evidence

25  that the shooter identified himself as a Crip coupled with Perry's stipulation that he was a

26  Crip, the discovery of Perry's fingerprints on the victim's car, and Perry's confession at a

27  party. The evidence showing Perry was present at the shooting was so strong that his

28  / / /

1   counsel did not attempt to deny it. (*See* Lodgment 5 at 13–14 (quoting defense counsel's

2   opening statement).)

3   　　While the state court did not dwell on other evidence, it bears mentioning that the

4   killing took place during a robbery where four men were present: Watts (the victim), Wheeler

5   (who testified at trial), Perry, and Perry's associate. Watts and Wheeler were there to sell

6   ecstasy pills, and Perry and his associate were ostensibly there to buy them. Both Perry and

7   his associate robbed Wheeler, and then began to rob Watts. When Watts resisted, one of

8   the two robbers (identified as Perry's associate) said "Shoot him" and the other (identified

9   as Perry) did. (Lodgment 5 at 4.) With this evidence before them, the jury could hardly have

10  believed the two robbers were strangers, that Perry was uninvolved in the robbery, or that

11  he did not intend for the victim to be shot. Even if they had accepted defense counsel's

12  argument that the shooter was someone else (*Id*. at 13–14), the jury likely would have

13  concluded Perry ordered the killing and that it was done in furtherance of the armed robbery

14  he and his associate were committing.

15  　　It is also relevant that numerous phone calls were made between Perry's girlfriend's

16  phone and Watts' phone in the days leading up to the robbery and killing, including one on

17  the evening Watts was killed. Perry's girlfriend denied making the calls, and suggested that

18  Perry may have used her phone to make them. In addition, fingerprint evidence showed that

19  Perry entered Watts' car through the passenger door on the driver's side, suggesting that

20  he was the one who sat behind Watts. Wheeler testified that the man who sat behind Watts

21  was the shooter. Wheeler's descriptions of the two robbers established they looked different,

22  and Wheeler's description of the shooter pointed to Perry. All this amounts to far more than

23  merely circumstantial evidence, and Perry was not, as he now claims, convicted solely on

24  the strength of the two admitted statements.

25  　　Perry points to portions of the record he believes show the case against him was

26  weak. (Obj. at 29–31.) He argues Wheeler merely described him as the shooter rather than

27  identifying him as such; that there are several Crips gangs and perhaps the shooters were

28  members of a different Crips gang than Perry was; that the witnesses who originally reported

Perry's confession were reluctant or unreliable; that the officer who took statements regarding the confession failed to make written notes or a recording; that a witness who looked into the car before the shooting saw no signs of a struggle; and that one of the calls between Perry's girlfriend's phone and Watts' phone was made while Perry was supposedly in the car with Watts. Most of these are at best minor issues. The strongest are those that might call into question the reliability of evidence of Perry's confession. But the state court discussed those at length, and explained its reasons for concluding that evidence was reliable enough to be admitted. (Lodgment 5 at 25–31.)

The deferential standard on habeas review is generally whether the Court has "grave doubt as to the harmlessness of the error." *See Cudjo v. Ayers*, 698 F.3d 752, 768 (9th Cir. 2012) (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)). But where, as here, the state court has applied the higher, "harmless beyond a reasonable doubt" standard (*see* Lodgment 5 at 24 (finding that if any *Doyle* error occurred, it was harmless beyond a reasonable doubt) (citing *Chapman*)) the Court must defer to the state court's determination unless it is unreasonable. *Cudjo* at 768.  Even accepting that the evidence was as Perry now reports it, it is not compelling. The state courts' determination was reasonable, and the Court defers to it. Furthermore, the Court does not harbor grave doubts as to the harmlessness of the error.

**Conclusion and Order**

For the reasons set forth above, Perry's objections to the R&R are **OVERRULED** and the Court **ADOPTS** the R&R. The petition is **DENIED** and a certificate of appealability is also **DENIED**.

**IT IS SO ORDERED**.

DATED:  August 15, 2014

**HONORABLE LARRY ALAN BURNS**
United States District Judge

12cv2512